# EXHIBIT A

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

Jesse Hsien Chueh Yao,

*Plaintiff,*

v.                                                        Case No. 8:24-cv-02877-MSS-NHA

University of South Florida Board of Trustees,
University of South Florida,
Lakeland Regional Health Medical Center
Stephanie Anderson

*Defendant.*

## PLAINTIFF'S CORRECTED OPPOSITION TO DEFENDANT LAKELAND REGIONAL HEALTH MEDICAL CENTER'S MOTION TO DISMISS AMENDED COMPLAINT

Plaintiff Jesse Hsien Chueh Yao ("Plaintiff") respectfully submits this Opposition to the Motion to Dismiss ("MTD") filed by Lakeland Regional Health Medical Center ("LRHMC"). Defendant's Motion is legally deficient and should be denied in full, as it rests on factual mischaracterizations, selective legal interpretations, and improper challenges to well-pleaded allegations that must be accepted as true under Rule 12(b)(6). As explained below, Plaintiff has alleged sufficient facts to support each of his claims.

## INTRODUCTION

Plaintiff, an Asian American of Taiwanese descent, brings this action against LRHMC for conduct that permanently destroyed his professional future.

While completing his Clinical Education 3 ("CE3") at LRHMC—assigned by the University of South Florida ("USF")—Plaintiff was subjected to racial discrimination, retaliation, and abuse by Clinical Instructor (CI) Jennifer Kondrach, a licensed physical therapist (PT) employed by LRHMC. He was removed from the program just six weeks before earning his Doctor of Physical Therapy ("DPT") degree, making him ineligible for licensure and ending his path to becoming a PT. Beyond devastating academic and career consequences, Defendant's actions caused Plaintiff severe emotional trauma and depression. The Amended Complaint alleges claims for Title VI discrimination and retaliation, breach of fiduciary duty, intentional infliction of emotional distress, fraudulent misrepresentation, breach of contract, gross and systemic negligence, and battery. Defendant now seeks dismissal by mischaracterizing the facts, introducing premature factual disputes, and misapplying Rule 12(b)(6) standards. As demonstrated below, Plaintiff's allegations are detailed and legally sufficient to survive dismissal at this stage.

## **LEGAL STANDARDS**

To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the alleged facts allow the court to

reasonably infer the defendant's liability. *Iqbal*, 556 U.S. at 678. The court must accept all well-pleaded allegations as true and view them in the plaintiff's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Its role is not to resolve factual disputes or weigh evidence, but to assess whether the complaint states a cognizable legal claim. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). Dismissal is inappropriate merely because the court doubts the plaintiff will ultimately prevail. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). At this stage, a plaintiff need only allege enough facts to raise a reasonable expectation that discovery will uncover supporting evidence. *Twombly*, 550 U.S. at 556.

## I. DEFENDANT'S MOTION TO DISMISS RELIES ON IMPROPER FACTUAL DISPUTES AND MISREPRESENTATIONS

Defendant LRHMC's MTD improperly contests factual allegations and misstates key events in an effort to pre-litigate the merits—an approach that is impermissible at the Rule 12(b)(6) stage.

## A. Defendant Improperly Challenges Well-Pleaded Allegations

Though Defendant concedes that well-pleaded facts must be accepted as true, it simultaneously claims Plaintiff's allegations are "not accurate." Such arguments violate the Rule 12(b)(6) standard, which prohibits resolving factual disputes and requires all inferences to favor the Plaintiff.

## B. Misrepresentation of Timeline Undermines Retaliation Claim

Defendant asserts Plaintiff was terminated on July 16, 2021, but the Amended Complaint states he was notified on July 12—immediately after reporting discrimination and assault. This misstatement attempts to weaken the temporal link in Plaintiff's Title VI retaliation claim.

## C. Obscuring Accountability Through Vague Attribution

Defendant references a "USF representative" to describe the individual who gave Plaintiff a failing grade. This vague attribution appears nowhere in the Amended Complaint and deflects responsibility from the actual decision-maker.

## D. Selective Quoting Misleads the Court

Defendant cites the August 12, 2021 letter to suggest Plaintiff was given remediation, but omits that the sanctions were based on fabricated reports issued after Plaintiff's complaints. This omission misrepresents the retaliatory context.

## E. Mischaracterizing Factual Allegations as Conclusory

Despite Plaintiff's detailed timeline and factual assertions, Defendant labels them "conclusory," ignoring the *Iqbal* and *Twombly* standard that governs plausibility—not evidentiary proof—at this stage.

## F. Inattention Undermines Motion's Credibility

Defendant even misspelled Plaintiff's name in the very first sentence of the

4

MTD, a careless error that reflects the broader lack of accuracy undermining the credibility of its Motion.

## II. PLAINTIFF HAS PROPERLY ALLEGED A TITLE VI DISCRIMINATION CLAIM

Defendant LRHMC incorrectly argues that Plaintiff lacks standing and fails to state a claim under Title VI. Plaintiff has plausibly alleged that he (1) was discriminated against, (2) on the basis of race, (3) by an institution receiving federal financial assistance, and (4) that the discrimination was intentional.

### A. Plaintiff Has Standing Under Title VI

Title VI applies to all operations of institutions receiving federal financial assistance under the Civil Rights Restoration Act, 42 U.S.C. § 2000d-4a. Plaintiff alleges that LRHMC receives federal funds and participated in his clinical placement through a CE agreement with USF (Doc. 4, ¶¶ 13, 18). A plaintiff need not be the direct recipient of funding to assert standing under Title VI. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 183 (2005) (retaliation claims extend to participants in federally funded programs); U.S. Dep't of Justice, Title VI Legal Manual § VIII. As a participant in LRHMC's CE program, Plaintiff has standing.

### B. Plaintiff Has Alleged Disparate Treatment Based on Race

At the pleading stage, Plaintiff is not required to identify a

comparator. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002). Courts

accept allegations of unique mistreatment—such as racial stereotyping,

pretextual discipline, and deviations from standard procedures—as

sufficient to infer intentional discrimination. *Doe v. Columbia Univ.*, 831 F.3d

46, 56 (2d Cir. 2016); U.S. Dep't of Justice, Title VI Legal Manual § VIII

(2021). Plaintiff was the only Asian student during his CE3 placement at

LRHMC and was supervised one-on-one by Kondrach. He alleges

fabricated reports, racial stereotyping, and removal from CE3—all adequate

to support a claim of disparate treatment.

## C. Plaintiff's Supervisor Engaged in a Pattern of Discriminatory Conduct

Kondrach, Plaintiff's CI, remarked: "Why are you breathing heavily—do

all Asians breathe heavily like you?" following Plaintiff's sinus surgery. This was

not an isolated incident but part of a pattern that included a retaliatory

evaluation, fabricated reports, and program dismissal. LRHMC attempts to

dismiss this as a "stray remark," but the law does not support that

characterization when the comment is made by a supervisor with

decision-making authority and is closely followed by adverse actions, such

comments constitute direct evidence of racial bias. *Ash v. Tyson Foods, Inc.*, 546

U.S. 454, 456 (2006) (supervisors' racially charged comments can constitute direct evidence of discrimination when tied to adverse actions).

**D. Defendant's Justifications Are Pretextual**

Defendant's claim that Plaintiff was dismissed for academic reasons is contradicted by allegations that Kondrach's reports were fabricated after Plaintiff reported discrimination and assault. Courts recognize that false justifications and procedural deviations support pretext. See *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804–05 (1973). Plaintiff reported his concerns to Human Resource (HR) but was told he would not receive the investigation's outcome. LRHMC failed to review the legitimacy of the reports.

Defendant's reliance on *Folkes v. N.Y. Coll. of Osteopathic Med.*, 214 F. Supp. 3d 273 (E.D.N.Y. 2016), is misplaced. In *Folkes*, there was no causal link between the racial remark and the adverse action. Here, Kondrach's comment and subsequent retaliation were part of a continuous discriminatory course. Plaintiff's well-supported allegations state a valid Title VI claim.

**III. PLAINTIFF HAS SUFFICIENTLY ALLEGED A TITLE VI RETALIATION CLAIM**

To state a retaliation claim under Title VI, a plaintiff must allege: (1) protected activity; (2) a materially adverse action; and (3) a causal connection

between them. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 184 (2005). Plaintiff has satisfied each element.

## A. Plaintiff Engaged in a Protected Activity

Defendant argues Plaintiff fails to state a Title VI retaliation claim because the alleged retaliatory act was committed by an individual employee and vicarious liability is unavailable under Title VI. This misstates the law and mischaracterizes Plaintiff's theory. Title VI holds institutions—not individuals—liable for retaliation when employees act within their authority or when institutions fail to address known discriminatory conduct effectively (*Canaan v. Carnegie Mellon Univ.*, Civil Action No. 23-2107, __ F. Supp. 3d __, 2024 U.S. Dist. LEXIS 227575 (W.D. Pa.)). Plaintiff alleges that he reported racial discrimination and assault to Anderson, USF's DCE, who oversaw clinical placements and held responsibility for addressing such concerns (*Tandy v. Marti*, 213 F. Supp. 2d 935 (S.D. Ill. 2002); *Giles v Shaw Sch.*, 655 F.App'x at 1002). In addition to informing Anderson, Plaintiff also filed a grievance with LRHMC's HR after his removal from CE3, placing the institution on notice of his complaints about racial discrimination and assault-related concerns. As a federal funding recipient, LRHMC is liable for retaliatory acts it failed to prevent or remedy after being placed on notice of Plaintiff's complaints. Plaintiff's report qualifies as protected activity.

**B. Plaintiff Suffered a Materially Adverse Action**

Dismissal from a CE program constitutes a materially adverse action under

Title VI. See *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006);

*Canaan v. Carnegie Mellon Univ.*, Civil Action No. 23-2107, __ F. Supp. 3d __, 2024

U.S. Dist. LEXIS 227575 (W.D. Pa. Dec. 17, 2024). After reporting racial

discrimination, Plaintiff received a retaliatory mid-term evaluation. He then

informed Anderson about the evaluation and was assaulted by Kondrach. After

reporting the assault, Kondrach issued three fabricated incident reports, and

Anderson immediately terminated Plaintiff's CE3 placement without

investigation. Plaintiff had no prior disciplinary history. The sudden escalation

following protected activity supports an inference of retaliation under

Burlington's contextual framework and Canaan's analysis of deliberate

indifference in educational settings.

**C. Plaintiff Has Established a Causal Connection**

Temporal proximity supports a finding of causation. *Clark Cnty. Sch. Dist.

v. Breeden*, 532 U.S. 268, 273 (2001) ("[T]emporal proximity must be 'very close' to

establish causation"). After reporting racial discrimination to Anderson, Plaintiff

received a retaliatory mid-term evaluation from Kondrach. Upon informing

Anderson about the evaluation, Plaintiff was assaulted by Kondrach, who later

issued three fabricated incident reports after Plaintiff reported the assault.

Anderson then terminated Plaintiff's CE3 placement without investigation. This rapid sequence of events demonstrates temporal proximity and pretextual intent. These facts establish a causal connection under Title VI.

## D. Defendant's Case Law Is Misleading

Defendant cites *Rodgers v. Curators of Univ. of Mo.*, 56 F. Supp. 3d 1037 (E.D. Mo. 2014), where the plaintiff failed to plead any link between protected conduct and adverse action under Title VI. In contrast, Plaintiff presents a clear timeline showing protected activity followed by adverse actions from the same supervisory authority. As *Canaan v. Carnegie Mellon Univ.*, 2024 U.S. Dist. LEXIS 227575 (W.D. Pa.), confirms, circumstantial evidence—including timing and pretext—can support a Title VI retaliation claim when institutions fail to investigate complaints or rely on fabricated reports to justify adverse actions.

## IV. PLAINTIFF HAS SUFFICIENTLY PLED BREACH OF FIDUCIARY DUTY

## A. LRHMC's Control Over Licensure Eligibility Created a Fiduciary Duty

Courts recognize fiduciary duties in educational settings where institutions exercise control over students' professional futures. *Chou v. Univ. of Chicago*, 254 F.3d 1347 (Fed. Cir. 2001); *Johnson v. Schmitz*, 119 F. Supp. 2d 90 (D. Conn. 2000). Here, LRHMC's authority to evaluate Plaintiff's clinical performance—a prerequisite for licensure—established a relationship of trust and dependency. As in *Chou*, where a professor controlled a student's research and career

opportunities, LRHMC's role as gatekeeper to Plaintiff's PT license imposed fiduciary obligations to act in good faith.

**B. Defendant's Cases Are Distinguishable**

*Morrison v. Univ. of Miami*, 2016 WL 3129490, and *Awodiya v. Ross Univ.*, 2019 WL 13255316, involved general university policies, not clinical programs tied to licensure. LRHMC's contractual obligations under the CE Agreement and its control over Plaintiff's professional eligibility distinguish this case, aligning it with *Chou* and *Johnson*.

**V. PLAINTIFF HAS SUFFICIENTLY PLED INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**A. Extreme and Outrageous Conduct**

Plaintiff's IIED claim meets Florida's stringent standard by alleging cumulative misconduct that shocks the conscience. *Metropolitan Life Ins. Co. v. McCarson*, 467 So. 2d 277, 279 (Fla. 1985). LRHMC's conduct—Kondrach's racial stereotyping ("Why are you breathing heavily—do all Asians breathe heavily like you?"), physical assault (slapping Plaintiff's hand), fabricated reports, and retaliatory dismissal—constitutes a systemic abuse of authority in an educational setting where Plaintiff's career hinged on LRHMC's evaluations. Courts recognize that physical intimidation by supervisors in positions of power supports IIED claims. *LeGrande v. Emmanuel*, 889 So. 2d 991 (Fla. 3d DCA 2004).

**B. Severe Emotional Distress**

Plaintiff's psychological injuries—chronic anxiety, depression, and trauma-induced avoidance of healthcare settings—are corroborated by therapy records and meet Florida's severity standard. *Nims v. Harrison*, 768 So. 2d 1198 (Fla. 1st DCA 2000) (debilitating harm from threats).

**C. Defendant's Misplaced Reliance on Employment Cases**

Defendant cites workplace cases like *Williams v. Worldwide Flight Servs.*, 877 So. 2d 869 (Fla. 3d DCA 2004), and *Folkes v. N.Y. Coll. of Osteopathic Med.*, 214 F. Supp. 3d 273 (E.D.N.Y. 2016), but these are inapposite. Unlike *Williams* (isolated racial slurs) or *Folkes* (single discriminatory remark), LRHMC's cumulative misconduct—racial stereotyping, physical assault, and institutional betrayal—occurred within a coercive academic dependency where Plaintiff could not exit without sacrificing licensure.

**D. Institutional Indifference Amplifies Harm**

LRHMC's refusal to investigate complaints, exclusion of Plaintiff's advocate from grievance meetings, and reliance on fabricated reports demonstrate deliberate indifference, exacerbating the harm. *Canaan v. Carnegie Mellon Univ.*, 2024 U.S. Dist. LEXIS 227575 (W.D. Pa.) (administrative inaction supports causation).

## VI. PLAINTIFF HAS SUFFICIENTLY PLED FRAUDULENT MISREPRESENTATION

## A. Plaintiff Has Properly Alleged Fraudulent Misrepresentation by LRHMC

To state a claim for fraudulent misrepresentation under Florida law, a plaintiff must allege: (1) a false statement of material fact; (2) knowledge of its falsity; (3) intent to induce reliance; and (4) justifiable reliance resulting in harm. *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010). Plaintiff satisfies each element. LRHMC's HR representative, Beverly Mack, falsely stated during the grievance process that "the law is not so clear regarding supervision," despite clear Florida law prohibiting supervision of PT students by PTAs. Plaintiff relied on that statement and refrained from further objecting, which contributed to the harm to his academic and professional future.

## B. Plaintiff Has Alleged a Specific Misrepresentation by LRHMC

Contrary to Defendant's implication that the misrepresentation was vague or made by another party, Plaintiff specifically alleges that LRHMC's HR department made the misleading statement about PTA supervision. Paragraph 75 of the Amended Complaint identifies this misstatement, which was made in response to Plaintiff's formal grievance—after he had already been removed from CE3. This satisfies Rule 9(b)'s particularity requirement. *Wilding v. DNS Servs. Corp.*, 941 F.3d 1116, 1128 (11th Cir. 2019).

## C. LRHMC Knew or Should Have Known PTA Supervision Was Unlawful

As a licensed healthcare provider hosting clinical students, LRHMC was responsible for complying with Florida law regarding supervision. Under state regulations, PTAs are not authorized to independently supervise PT students. Assigning a PTA to supervise Plaintiff, while other students were assigned licensed PTs, violated this duty. Institutions are presumed to know and comply with governing laws in their field. *Nova Southeastern Univ. v. Gross*, 758 So. 2d 86, 90–91 (Fla. 2000).

**D. Plaintiff Justifiably Relied on the Misrepresentation and Was Harmed**

Plaintiff reasonably relied on LRHMC's misleading assurance about supervision legality during the grievance process. This deterred him from taking further steps to challenge the misconduct. As a result, he was unable to re-enter CE3, lost tuition, and suffered lasting career and emotional harm. These injuries satisfy the damage element of a fraud claim. *Gilchrist Timber Co. v. ITT Rayonier, Inc.*, 127 F.3d 1390, 1393 (11th Cir. 1997).

**E. LRHMC Cannot Disclaim Liability for Its Own Representations**

Defendant attempts to minimize its role by shifting focus away from its own conduct, but the false assurance came from LRHMC's HR during a formal grievance process. The CE Agreement was jointly executed with USF, and LRHMC had independent obligations to ensure legal supervision and address

14

student concerns. Florida courts recognize liability for joint or direct

misrepresentations when a party makes an authoritative statement that induces

reliance. *Palm Beach Cnty. Health Care Dist. v. Prof. Med. Educ., Inc.*, 13 So. 3d 1090,

1094 (Fla. 4th DCA 2009). LRHMC cannot now disclaim responsibility for a

misrepresentation that directly impacted Plaintiff.

## VII. PLAINTIFF HAS STANDING TO ASSERT BREACH OF CONTRACT CLAIM

### A. Plaintiff Is an Intended Third-Party Beneficiary Under Florida Law

The CE Agreement's primary purpose is to benefit students like Plaintiff

by ensuring safe, supervised clinical training. *Jallali v. Nova Southeastern Univ.*,

992 So. 2d 338, 343 (Fla. 4th DCA 2008). LRHMC's obligations under the

Agreement—including supervision by licensed PTs and

non-discrimination—directly protect students' educational and professional

interests. Florida courts override boilerplate disclaimers when contracts are

designed to benefit third parties. *Cnty. of Brevard v. Miorelli Eng'g, Inc.*, 703 So. 2d

1099 (Fla. 1997).

### B. LRHMC's Reliance on Insurance Precedent Is Misplaced

Defendant cites *American Gen. Life Ins. Co. v. O.H.M.*, 2021 WL 6690228

(M.D. Fla.), but insurance contracts are interpreted more strictly than educational

agreements. In *Jallali v. Nova Southeastern Univ.*, 992 So. 2d 338, 343 (Fla. 4th DCA

2008), students were deemed third-party beneficiaries of clinical training

contracts despite disclaimers.

## C. LRHMC's Inequitable Conduct Bars Its Disclaimer Defense

LRHMC invoked the CE Agreement to control Plaintiff's training and

evaluations but now denies his rights under it. Florida courts estop parties from

taking inconsistent positions. *State v. Harris*, 881 So. 2d 1079 (Fla. 2004).

## VIII. PLAINTIFF'S NEGLIGENCE CLAIMS ARE COGNIZABLE UNDER FLORIDA LAW

### A. Florida Law Imposes a Duty of Care in Clinical Education

Under Florida law, institutions supervising students in CE programs owe a

duty of care to protect them from foreseeable risks. *Nova Southeastern Univ. v.*

*Gross*, 758 So. 2d 86, 90–91 (Fla. 2000), a binding Florida Supreme Court decision,

established this principle when it held a university liable for placing a student in

an unsafe clinical internship. LRHMC similarly controlled Plaintiff's clinical

training, enforced supervision policies, and held authority over evaluations

critical to his licensure. This role created a duty to ensure a safe environment free

from known risks, such as Kondrach's misconduct.

### B. LRHMC Breached Its Duty Through Systemic Failures

LRHMC breached its duty by ignoring repeated complaints about

Kondrach's racial slurs, physical assault, and fabricated reports. Under *Nova*

*Southeastern Univ. v. Gross*, 758 So. 2d 86, 90–91 (Fla. 2000), institutions must

protect students from foreseeable risks in clinical programs. LRHMC's refusal to

investigate EthicsPoint complaints or correct Kondrach's unlawful

supervision—assigning a PTA to evaluate Plaintiff in violation of Florida

law—constitutes systemic neglect akin to the institutional failures condemned in

Nova Southeastern. Florida courts recognize that breaches occur when

institutions disregard foreseeable risks (*McCain v. Fla. Power Corp.,* 593 So. 2d 500,

503 (Fla. 1992)).

## C. Gross Negligence: Conscious Disregard for Safety

LRHMC's refusal to act on multiple red flags—racial discrimination,

physical assault, and EthicsPoint complaints—constitutes gross negligence under

Fla. Stat. § 768.72(2)(b). Gross negligence requires a "conscious disregard" for

safety, as illustrated in *Nova Southeastern*, where the court found a university

grossly negligent for ignoring foreseeable risks in clinical training. LRHMC's

indifference to Kondrach's escalating misconduct mirrors the deliberate neglect

in *Nova Southeastern*, warranting a finding of gross negligence.

## D. LRHMC Owed a Non-Delegable Duty of Care

As a clinical site, LRHMC assumed non-delegable duties to ensure student

safety under its agreement with USF. *Insinga v. LaBella*, 543 So. 2d 209 (Fla. 1989),

establishes that institutions cannot delegate responsibilities tied to public safety,

such as verifying the competence of those entrusted with care. Like hospitals,

LRHMC had a duty to ensure its supervisors (e.g., Kondrach) were qualified and

17

acting in good faith. Its failure to investigate complaints or correct unlawful

supervision (assigning a PTA to evaluate Plaintiff) breaches this duty under

Florida law.

## E. Defendant's Reliance on Employment Law Is Misplaced

LRHMC cites *Castleberry v. Chadbourne*, 810 So. 2d 1028 (Fla. 1st DCA 2002),

an employment case, but Florida courts impose heightened duties in educational

contexts where institutions control students' professional outcomes. *Nova*

*Southeastern Univ. v. Gross*, 758 So. 2d 86, 90–91 (Fla. 2000), holds that universities

owe a duty to protect students from foreseeable risks in clinical placements.

Similarly, *Limones v. School District of Lee County*, 161 So. 3d 384 (Fla. 2015),

emphasizes that schools must take reasonable steps to prevent foreseeable harm

during school-sponsored activities. Like the institutions in *Nova Southeastern* and

*Limones*, LRHMC ignored its obligation to protect Plaintiff from Kondrach's

abuse of supervisory authority, distinguishing this case from workplace disputes

governed by employment law.

## IX. PLAINTIFF HAS SUFFICIENTLY PLED VICARIOUS LIABILITY FOR BATTERY
## A. Florida Law Permits Vicarious Liability for Battery in Supervisory Roles

Defendant misrepresents Florida law by citing *Valeo v. East Coast Furniture*

*Co.*, 95 So. 3d 921 (Fla. 4th DCA 2012), which involved personal animus unrelated

to job duties. Florida courts hold employers liable for intentional torts committed

within the scope of employment. *Baptist Mem'l Hosp. v. Bell*, 384 So. 2d 145 (Fla. 1980) (hospital liable for nurse's assault during patient care); *Goss v. Human Servs. Assocs.*, 79 So. 3d 127 (Fla. 5th DCA 2012) (supervisor's harmful act tied to role). Kondrach's slap occurred during a clinical session while supervising Plaintiff—a core job function.

## B. Battery Occurred Within the Scope of Employment

Florida requires only that the tort be "intertwined" with employment duties. *Nazareth v. Herndon Ambulance Servs., Inc.*, 467 So. 2d 1067, 1078 (Fla. 5th DCA 1985) (vicarious liability for misconduct during training). Kondrach's slap was part of her escalating retaliation (racial remarks, fabricated reports) while evaluating Plaintiff. LRHMC cannot disclaim liability for acts arising directly from supervisory authority.

## C. Valeo Is Factually and Legally Distinguishable

*Valeo* involved a personal dispute outside work duties. Here, Kondrach's act stemmed from her role as CI, making LRHMC liable under *Baptist Mem'l Hosp.* and *Goss*.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant Lakeland Regional Health Medical Center's Motion to Dismiss

in its entirety, as the Amended Complaint sets forth sufficient factual allegations to support each of Plaintiff's claims.

Respectfully submitted,

By: /s/ Jesse H.C. Yao
Jesse Hsien Chueh Yao
516 Monet Dr., Rockville, MD, 20850
(240) 888-7555 | jesseyao1995@gmail.com
Pro Se Plaintiff